## Jones' Adm'x v. May et al.

May 20, 1949.

William Mellor and Charles Leibson for appellant.

L. R. Curtis for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

This action for wrongful death was instituted by Lucille Jones, widow of and administratrix of the estate of Henry Jones, deceased. The action grew out of an automobile collision between an automobile operated by Henry Jones, deceased, and a funeral hearse of R. G. May Funeral Director, Inc., which was operated by its employee, George W. May. There have been two trials. At the first trial the jury awarded $5,000. Motion and grounds for new trial having been filed, the court set aside the verdict and granted a new trial. Later plaintiff filed motion to set aside the order granting the defendant a new trial, and in overruling that motion the court said: "The court being of the opinion that it erred in refusing to peremptorily instruct the jury at the conclusion of all the evidence in this case; and that the verdict of the jury is flagrantly contrary to the weight of evidence, and particularly to the medical evidence bearing upon the cause of death; and that the verdict is not sustained by sufficient evidence, it is ordered by the court that the plaintiff's motion to set aside the order of February 20, 1948 granting the defendant a new trial, is overruled to which the plaintiff by counsel excepts."

At the conclusion of all the evidence at the second trial, the court directed verdict for the defendant. The administratrix appeals and asks that the directed verdict at the second trial be set aside and that the verdict of the first trial be reinstated and judgment entered thereon.

Appellant is here insisting, first, that there was ample evidence to take the cause to the jury. Appellee insists there was not. We shall look at the evidence from two angles, first, the facts surrounding the accident and, second, the testimony as to the cause of the death of Henry Jones.

We direct our attention first to the facts surrounding the accident. Henry Jones was operating his automobile eastwardly on Chestnut Street. The funeral car of appellee was traveling south on 28th Street. Chestnut Street is a boulevard. There was testimony that the funeral hearse failed to make the boulevard stop before entering Chestnut Street. This, however, was contradicted by witnesses for appellee. The front end

of the hearse struck the left rear fender of Jones' car. The impact knocked the rear end of Jones' car to its right about 8 or 10 feet. Certainly from the conflicting testimony there was ample evidence to take the matter to the jury as to whose negligence was the proximate cause of the injury.

We next direct our attention to the testimony as to the cause of Jones' death, which the court held was insufficient to take the cause to the jury. The force of the collision caused Jones' head to hit the side of the left window frame of the automobile. He received a slight cut behind his left ear and a bump on the left side of his head. According to the investigating police officer he acted somewhat dazed. The officer wanted to take Jones to the hospital but Jones did not think he was hurt seriously and thought he would soon be all right. He went home in about two hours after the accident complaining that his head was hurting. The following morning the left side of his face was swollen and his head continued to hurt. However, he continued work until Christmas Eve, which was 36 days after the accident. This was the last he ever worked. Some time after Christmas his condition seemed to grow worse until it reached the place that he would fall wih dizziness and become unconscious. Dr. Carter was called to attend him. After examination and obtaining history of the case, Dr. Carter concluded that Jones was suffering from traumatic epilepsy. He treated him accordingly and apparently Jones responded to the treatment, but not making the recovery anticipated the doctor made further investigation and learned that some 10 or 12 years prior to the accident Jones had had syphilis. A Kahn test was made which showed positive. According to the history of the case, a sore had appeared but after treatment had disappeared. Jones said he had not been bothered since. Dr. Carter stated that the reason the Kahn test showed positive was because Jones had not received sufficient treatment to show a negative test, but that the symptoms as manifest in no way were indicative that Jones condition was a result of this earlier syphilis. Treatment was given for the syphilitic condition until along in August. The patient gradually became worse. His wife inquired of the doctor if it would be all right to take Jones to the General Hospital as it was becoming more

difficult for her to care for him. Pursuant to the doctor's advice, Jones was removed to the General Hospital.

The evidence of two young internes of the hospital is before us. They testified that X-rays were taken which showed a mass or lesions about the lungs indicative of cancer of the lung. These internes testified that they informed Mrs. Jones that nothing could be done, or at least held out no hope for him. After about 10 days in the hospital Jones was moved back to his home, where, in the early part of October, he died.

Appellee, defendant below, takes the position that Jones was suffering from cancer of the lung and paresis, or syphilis of the brain, either of which could have caused his death. It is insisted, according to the medical testimony, that if Jones had cancer of the lung he could not have lived over 2 or 3 months after August when it was discovered to be in an advanced stage, although it is admitted that X-rays do not certainly and absolutely show the presence of cancer and that the only positive way to know is through microscopic tests.

Appellees insist that to submit a case to the jury under the medical testimony such as was here introduced throws the case hopelessly into the realm of speculation. We have carefully examined the testimony of Dr. Carter and the pertinent portions thereof have been read to the whole court sitting. We are not-called upon to state what we might think or would do had we been sitting as jurors. We can only determine whether or not there was sufficient evidence to take the case to the jury. Dr. Carter was examined at length. He testified as to how injuries to or blows on the head can cause traumatic epilepsy. He was asked concerning any chance of Jones' surviving traumatic epilepsy. He replied: "Traumatic epilepsy, as a general rule, gradually deteriorates the general health to the point where they sooner or later die. As I stated, what this man died of, is a question of opinion. It seems to me that no matter what other theories are advanced as to the cause of his death, it is impossible to overlook the fact that this man was able to work continually up until the time that he had the accident, and that then within a comparatively short length of time, he developed these attacks of dizziness and began having these epileptic attacks.

Possibly he had a cancer of the lung'; that I don't know. We do know that he had syphilis—this is true, but it is likewise true that there are very many more cases of syphilis who do not have epileptic attacks than there are cases which do have them. It is likewise true that it certainly is quite a coincidence, if we are going to say that his attacks were caused by syphilis, that they waited until just this time to develop, when he had them at no time before. It is likewise true when I saw the man first, he had none of the other mental symptoms of cerebral syphilis. It is in no way impossible for a man with cancer of the lung, if he had that, could in an accident receive an injury of the chest, as there is nothing inconsistent with the fact that a person who had syphilis, receiving an injury. Those things can happen, and evidently happen right straight along; and in this particular case, it is a matter for judgment to decide what was the cause of the man's condition.''

Dr. Carter was asked this question, and it must be borne in mind that Dr. Carter saw the patient some 60 times, ''In your professional opinion what caused the death of Henry Jones?'' He answered: ''In my opinion the death of Henry Jones came about as a result of this traumatic epilepsy which I think he had.''

Thus we have on the one hand the testimony of doctors, some of whom say that an X-ray shows cancer of the lungs. On the other hand, we have a physician and surgeon of 30 years experience testifying that in his opinion the cause of death was traumatic epilepsy brought on by the injury in this automobile accident. In addition to that we have the testimony of the widow who stated that for many years prior to the accident Jones had been a healthy robust man and a hard worker and that following the accident his condition was as has been stated above. These facts taken with the medical testimony certainly are sufficient to take the cause to the jury. Consequently, the court erred in peremptorily instructing the jury for the defendant.

Since the case must be reversed, this leads us then to the question of reinstating the former verdict. Very little is said about anything else other than the sufficiency of the evidence to support a verdict relative to the

granting of a new trial when motion and grounds were made at the first trial.

Both appellant and appellees insist the court erred in permitting the introduction of the death certificate. Appellant says that the court erred in not permitting the introduction of the death certificate for all that it shows. The court permitted its introduction only for the purpose of identification and to show time of death of the deceased. Appellees insist that it should not have been introduced for any purpose whatsoever and the court erred in so doing. We need only call attention to KRS 213.190 having to do with certified copies of the record of any birth, sickness, or death. This section provides: "Any such certified copy shall be prima facie evidence in all courts and places of the facts therein stated."

Newly discovered evidence, which in fact is merely cumulative, is not sufficient to support a motion for a new trial. If there was anything wrong with the instructions or merit in any other ground as set out in the motion and grounds for new trial, we cannot here ascertain as it has not been pointed out in brief the particular instruction complained of, nor have the other alleged grounds been discussed.

While it is true courts are rather hesitant and reluctant, upon reversal of judgment in a second trial, to reinstate the verdict of a former trial, yet we conclude that in the instant case such action is proper.

Wherefore, the judgment of the second trial appealed from is reversed and the court is directed to reinstate the verdict of $5,000, as awarded in the first trial, and enter judgment thereon.